## 65818. JAMES et al. v. FORD MOTOR CREDIT CORPORATION.

DEEN, Presiding Judge.

In September 1977 Mr. and Mrs. James, appellants here, purchased a 1978 Ford Mustang automobile and entered into a retail installment sales contract which was subsequently assigned to the Ford Motor Credit Co. (FMCC), appellee here. Mr. and Mrs. James were furnished with a booklet containing coupons for their monthly payments and a set of address labels, together with instructions for mailing. They made monthly payments approximately on time until the winter of 1980, at which time Mr. James was injured and began to receive disability payments, which provided him less income than his regular wages had done. Appellants contacted appellee's customer account representative by telephone regarding the possibility of making payments on a deferred basis or in a lesser amount during the period of Mr. James' disability, and it was agreed that the then due payment or payments might be postponed, and only a partial payment would be made during the next ensuing month.

According to the record, appellants did not make the partial payment until two months, rather than one, after this conversation but continued to make payments on a monthly basis, in more or less timely fashion, through January of 1981. According to appellee's records, no payment for February 1981 was received, and since the deferral during the previous year had produced a state of technical default, appellee in early March of 1981 declared appellants in default and repossessed the automobile. Six days later appellants tendered an installment payment, and sixteen days later they filed a complaint alleging that they were not in default and that the automobile had been wrongfully repossessed. After extensive discovery the trial court granted FMCC's motion for summary judgment. Appellants enumerate as error the granting of summary judgment to appellees. *Held:*

Although appellants contend that they had made all payments due at the time of the repossession, and that FMCC's acceptance of a number of payments which had been tendered after their respective due dates constituted a waiver of the right to enforce the default provisions of the contract, the evidence presented by appellants fails to sustain these contentions. Appellants made a number of discrepant statements in the course of discovery and from time to time were uncooperative to the point of hostility, if not evasiveness. For example, appellants' statements regarding the dates when certain payments were mailed were inconsistent both with the money order stubs and with statements made on different occasions by appellants themselves. Mrs. James, after extensive examination and cross-examination, ultimately acknowledged that, contrary to prior testimony, she had altered the dates on some of the stubs.

Not every detail of sundry disputed factual matters was conclusively resolved in the pleadings or through discovery procedures. Examination of the record indicates, however, that such disputed matters were either irrelevant or, at best, *de minimis.* This being so, the evidence clearly indicates that there remain in the case no genuine issues of material fact that would preclude an award of summary judgment. See OCGA § 9-11-56 (c) (Code Ann. § 81A-156). Our scrutiny of the record indicates that, the statutory criteria having been fulfilled, the court below did not err in granting appellee's motion for summary judgment.

*Judgment affirmed. Banke, J., concurs. Carley, J., concurs specially.*

DECIDED MAY 4, 1983 —
REHEARING DENIED JUNE 14, 1983 —

*Charles C. Carter,* for appellants.
*Jerry A. Buchanan,* for appellee.

CARLEY, Judge, concurring specially.
I agree with the majority's conclusion that the trial court's grant of summary judgment should be affirmed. However, I cannot concur in the analysis of the issues or the reasoning utilized by the majority in reaching this conclusion. With regard to the manner and method of payments made prior to the foreclosure and the invocation of a quasi-new contract based upon the course of dealing between the parties, I believe that genuine issues of material fact remain and that these issues were neither "irrelevant or, at best, de minimus" as

characterized by the majority.

However, there is one matter of record not mentioned by the majority which, in my opinion, is dispositive of the case. Appellants based their action against appellees on conversion in connection with the allegedly improper repossession of the vehicle. "If an agent takes the property of another *without his consent* and delivers it to the principal, it is a conversion, and trover will lie for the recovery of the property or for damages, as the plaintiff may elect." (Emphasis supplied.) *Nat. Bank of Tifton v. Piland,* 22 Ga. App. 471, 472 (96 SE 341) (1918). In this case, the record reveals that, at the time of the repossession of the automobile, Mr. James signed a "vehicle release form" which stated as follows: "I, Mr. Leonard James, release to Investigative Services of Alabama, Inc., one 1978 blue Mustang, vehicle identification number 8F04Z102240 vehicle due to nonpayment of mortgage lien note . . . held by Ford Motor Credit, Hicksville, New York." OCGA § 51-11-2 (Code Ann. § 105-1803) provides that "[a]s a general rule no tort can be committed against a person consenting thereto if that consent is free, is not obtained by fraud, and is the action of a sound mind . . ." "The plaintiff is bound by his written consent. [Cits.]" *Hutcheson v. McGoogan,* 162 Ga. App. 657, 659 (292 SE2d 527) (1982). See also *Winfrey v. C. & S. Nat. Bank,* 149 Ga. App. 488 (1) (254 SE2d 725) (1979). Thus, it clearly appears to me that by signing the "vehicle release form," James "consented" to the very repossession which he now contends was "wrongful." Therefore, I believe that, on this basis, the trial court properly granted summary judgment.